UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN HAYWOOD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-CV-1107 SRW |
| | ) | |
| EILEEN RAMEY, | ) | |
| | ) | |
| Respondent(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Steven Haywood for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The matter is fully briefed. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.   BACKGROUND**

In 2013, a jury convicted Petitioner of three counts of first-degree assault of a law enforcement officer, three counts of armed criminal action, selling a controlled substance, receiving stolen property, resisting arrest, and possession of drug paraphernalia. The jury acquitted Petitioner on the remaining counts. The Circuit Court of the City of St. Louis sentenced him to a total of 20 years imprisonment. Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, who affirmed. Petitioner filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court denied Petitioner's claims, and the appellate court affirmed the motion court's decision. Petitioner now seeks habeas relief before this Court.

1

The Missouri Court of Appeals, Eastern District, described the facts of Petitioner's conviction as follows:

>   Officer Tom Scanlon (Officer Scanlon) received information from a confidential informant about drug activities occurring at Movant's residence. Officer Scanlon conducted surveillance of the residence and, after observing suspected drug activity, obtained a search warrant for the residence. Believing Movant may be armed, Officer Scanlon asked a SWAT team to execute the search warrant.
>
>   At approximately 10:45 a.m. on March 5, 2012, a fifteen-member SWAT team executed the warrant. The SWAT team members were fully dressed in full body armor, including bullet-proof vests with the word "POLICE" written on the front and back. Officer Thomas Kranz (Officer Kranz) knocked on the front door and loudly announced, "Police, search warrant." Officer Kranz waited approximately 20 seconds and then forced the door open with a battering ram. Officer Jeff Stege (Officer Stege) deployed a flash bang device that made a loud sound to briefly disorient anyone in the room. Officer Joseph Stuckey (Officer Stuckey) entered the residence, followed by Officer Stege. Several officers yelled, "Police, search warrant," as they entered the residence.
>
>   Movant lived on the second floor of the duplex, with an outside entry on the ground floor. The officers went up the steps leading to the second floor, yelling, "Police, search warrant[.]" As they reached the top of the stairs, Officer Stege yelled there was an open door ahead and a long hallway to the right. Officer Stege went to the right to cover the hallway, while Officer Stuckey moved behind him to cover the open door. Movant yelled, "Get the f--- out of my house" and fired a shot. Officer Stuckey yelled, "Hey, it's the police."
>
>   Movant was near the end of the hallway, with a pistol in his left hand. Officer Stege attempted to fire his weapon at Movant but his gun malfunctioned. Officer Stuckey took Officer Stege's place. Officer Stuckey could see half of Movant's face, and fired at Movant three or four times. Officer Stege fixed his weapon and fired at Movant three or four times. Movant fired again, hitting the wall six to eight inches from Officer Joseph Mader's (Officer Mader) face. Officer Mader shot at Movant once and Movant fired a third time.
>
>   The officers then backed out of the residence, and the police called out to Movant to surrender. Movant came down the steps, holding his infant daughter, followed by his girlfriend, Tiara Booker (Booker). The officers ordered Movant to give the child to Booker and Movant complied. Movant was uncooperative and refused to give his arm to officers when they attempted to handcuff him. The officers eventually forced Movant to the ground and arrested him. After he was in the back seat of the police vehicle, Movant leaned forward and tried to bite one of the officer's arms.

> During a search of the residence, officers recovered a 9-millimeter semi-automatic handgun with an extended clip and an extra magazine, a plastic container of marijuana, 27 individual bags of marijuana, scales, sandwich bags, and a large amount of money.

(ECF No. 16-9, at 2-4).[1]

## II.     STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme]

---

[1] These facts are taken directly from the Court of Appeals' Memorandum affirming Petitioner's convictions on his PCR appeal. This Court presumes a state court's determination of a factual issue is correct. *See* 28 U.S.C. § 2254(e).

3

Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.   DISCUSSION

Petitioner asserts seven grounds for relief in his Petition: (1) the trial court erred in denying Petitioner's motion for judgment of acquittal as to counts I, III, and V because there was insufficient evidence presented at trial to support the convictions; (2) the trial court erred in denying Petitioner's motion for judgment of acquittal as to the sale of a controlled substance because there was insufficient evidence presented at trial to support the conviction; (3) the trial court committed plain error in instructing the jury and in the verdict forms given to the jury; (4) he received ineffective assistance of counsel when his trial counsel did not call Torie Greene as a witness; (5) he received ineffective assistance of counsel when his appellate counsel did not raise as a basis for appeal that the trial court erred in allowing a ballistics expert to testify on topics undisclosed to the defense; (6) he received ineffective assistance of counsel when his trial

4

counsel did not call Torie Greene and Keith Raymond as witnesses; and (7) he received ineffective assistance of counsel when his trial counsel did not challenge the qualifications of the ballistics expert and attempted to cross-examine him without preparation.

### A. Ground One – Sufficiency of the Evidence for Counts I, III and V

In his first ground for relief, Petitioner asserts the State did not present sufficient evidence at trial to convict Petitioner of three counts of assault of a law enforcement officer. Petitioner argues the State did not establish he knew or was aware the officers were law enforcement officers when he shot at them.

For sufficient evidence to support a criminal conviction, the Fourteenth Amendment's Due Process clause requires "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam) (emphasis in original) (quoting *Jackson*, 443 U.S. at 319). This standard "gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

In a habeas proceeding, § 2254 "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). A federal habeas court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v.*

*Smith*, 565 U.S. 1, 2 (2011) (per curiam). Rather, a federal habeas court may only overturn a state court decision on the sufficiency of the evidence "if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico*, 559 U.S. at 773); *accord Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam) ("*Johnson*") (A federal habeas court may grant relief if the jury's finding of guilt, based on the evidence considered in the light most favorable to the prosecution, "was so insupportable as to fall below the threshold of bare rationality.").

While the threshold of proof in this analysis "is purely a matter of federal law," a federal habeas court looks to state law for the substantive elements of the offense. *Johnson*, 566 U.S. at 655. Importantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68. The Missouri Court of Appeals described the elements of assault of a law enforcement officer as follows:

> A person commits the crime of assault of a law enforcement officer . . . in the first degree if such person attempts to kill or knowingly causes or attempts to cause serious injury to a law enforcement officer." Section 565.081.1. To convict under this statute, the State must prove that Haywood "knew or was aware" that the victims were law enforcement officers. See State v. Reed, 402 S.W.3d 146, 150 (Mo. App. W.D. 2013).

(ECF No. 16-5, at 2).

A federal court's limited review of a state court's sufficiency of the evidence decision means that when a federal habeas court is "'faced with a record of historical facts that supports conflicting inferences [the court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326). A federal habeas court is not permitted to make its own determination of witness credibility, for that determination is for the state court trier of fact. *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000). In its review of Petitioner's sufficiency of the

6

evidence claim, the Missouri Court of Appeals accepted as true all evidence and inferences supporting the convictions and disregarded any contrary evidence and inferences unless "a juror would be unable to disregard them." (ECF No. 16-5, at 2). The Court of Appeals found the evidence was sufficient to support the convictions:

> In this case, the officers wore SWAT attire, including vests with the word "police" written on the front and back. They announced they were police with a search warrant multiple times before entering Haywood's residence, as they entered and while inside. The officers testified that the "flash bang" device they deployed made a loud noise for fifteen seconds at most and then they announced "police" again. The officers also testified that they heard Haywood yelling at them and that he looked out from behind the wall while he was shooting at them. Haywood testified at trial that he did not hear the police announcements. He claimed that he heard only loud booms and thought his family was in danger of attack and therefore shot blindly out of the bedroom to warn the intruders he was armed. He testified that he did not know they were police until he came out of the bedroom after he finally heard them say "police, come to the top of the stairs."
>
> A reasonable inference from the officers' testimony is that Haywood would have heard the police announcements and seen their police vests at some point before or during the time he was shooting at them, and the jury was free to disbelieve Haywood's testimony to the contrary. This is sufficient evidence that Haywood knew or was aware that he was shooting at law enforcement officers. Haywood's arguments on appeal – that the evidence suggests Haywood could not have heard the police announcements from the second floor or over the "flash bang" device and could not have seen how the officers' were dressed because he was shooting at them from behind a wall – would require us to resolve conflicts in and draw inferences from the evidence that are contrary to the jury's verdict, which we cannot do under our standard of review. Rather, we defer to the jury's resolution of any conflict between the officers' and Haywood's testimony and between any inferences to be drawn therefrom.

(ECF No. 16-5, at 3-4).

The Court of Appeals applied the appropriate standard, and the record supports the factual findings cited by the court. Six different officers testified they announced their presence by shouting, as loudly as they could, "police, search warrant," while knocking on the door of the residence, while going up the stairs of the residence, and while inside during the shootout. (ECF No. 16-1, at 293, 295, 297, 302, 305, 307, 309, 346-48, 401-03, 473, 479). Officer Tom Scanlon,

7

who watched the SWAT team enter the residence from six houses south of the residence, testified he heard the police officers announce themselves at least three to four times. *Id*. at 212-13. A reasonable inference from the officers' testimony is that Petitioner heard the officers yelling and knew the people who entered his home were law enforcement officers. Additionally, the officers testified to hearing Petitioner shout, "Get the f*ck out of my house." (ECF No. 16-1, at 308, 348, 403, 486). A reasonable inference is that if the officers could hear Petitioner, then Petitioner could also hear the officers. A jury could reasonably conclude from this evidence Petitioner knew the officers were law enforcement officers when he shot at them because he heard them announce themselves as such.

Petitioner argues *State v. Whalen*, 49 S.W.3d 81 (Mo. 2001), establishes there was insufficient evidence to support his convictions. In *Whalen*, the defendant, who was experiencing mental health issues at the time of the incident, fired at three police officers when they entered his home. 49 S.W.3d at 183. The defendant knew a police officer was in his home but questioned whether he was actually a police officer. *Id*. No evidence was presented that defendant knew two other police officers had entered the home after the first. *Id*. The Missouri Supreme Court held a reasonable juror could not find beyond a reasonable doubt the defendant knew the two additional officers had entered the home when he fired his gun because only the first officer announced himself. *Id*. at 185.

The circumstances of *Whalen* differ from the circumstances presented in this case and make it inapplicable. Here, the evidence establishes several officers announced their presence, shouting, "police, search warrant." A reasonable juror could conclude Petitioner knew multiple officers, not just a single officer, were entering his home based on the shouting and the phrase,

8

"police, search warrant." Additionally, there is no evidence Petitioner was suffering from mental health issues as in *Whalen*.

The Court finds, in view of the evidence presented at trial, the decision of the Missouri Court of Appeals is neither incorrect nor an objectively unreasonable application of clearly established law, and it constitutes a reasonable determination of the facts. The State presented sufficient evidence at trial to convict Petitioner of assault of law enforcement officers. Ground one will be denied.

### B.    Ground Two – Selling a Controlled Substance

In his second ground for relief, Petitioner argues the State did not present sufficient evidence to convict Petitioner of selling a controlled substance. Petitioner asserts the State charged him with selling more than five grams of marijuana on March 5, 2012, and it presented no evidence he sold any marijuana on that date. The only evidence presented, according to Petitioner, is an officer's testimony Petitioner sold marijuana on February 29, 2012.

The Missouri Court of Appeals denied Petitioner's direct appeal on this point and held as follows:

> First, an exact date is not an essential element of the charged offense, at least where, like here, the defendant has not asserted an alibi defense. "Where an alibi is not a valid defense, imprecision in identifying the time or date of the alleged offense does not place such a burden on the defendant's ability to defend himself that fundamental fairness and due process require greater specificity." State v. Pennell, 399 S.W.3d 81, 93-94 (Mo. App. E.D. 2013) (reviewing claim of instructional error). Moreover, "on or about" terminology is commonly used and does not bind the State to proving an exact date; rather the phrase means "approximately," "about," "without substantial variance from," or "near" the date listed. State v. Cleary, 397 S.W.3d 545, 548 (Mo. App. S.D. 2013) (quoting Missouri Pattern Instructions, Notes on Use). Five days is an acceptable variance in a case like this where, again, Haywood is not claiming an alibi defense on any relevant dates. See State v. Reagan, 654 S.W.2d 636, 641 (Mo. App. E.D. 1983) (evidence of possession of bomb on July 3 sufficient to support conviction based on possession of bomb "on or about July 8" where no alibi for that time period).

> Therefore, what happened in this case on February 29 is encompassed in the time frame "on or about March 5."
>
> Although the officer did not see marijuana and money being exchanged in the hand-to-hand transaction he observed on February 29, 2012, the evidence of what was seized a few days later at Haywood's residence and his admission to selling drugs are sufficient evidence from which to infer that Haywood sold more than five grams of marijuana sometime around March 5, 2012. The police had been conducting surveillance at Haywood's home periodically for weeks. Over that time, they observed an "inordinate amount" of cars and people going to Haywood's residence. People would walk up to the front door, knock, go inside and come back out within a short time. After seeing Haywood engaged in a hand-to-hand transaction on the front steps on February 29, the officers obtained a search warrant. When they executed that search warrant at Haywood's residence on March 5, they seized 27 individual bags of marijuana – which Haywood said was about 30 grams total – money, a scale and Haywood's personal items, all from a safe in Haywood's bedroom to which he said only he had access. Haywood admitted at trial that those bags of marijuana were for sale and testified "I was selling marijuana."
>
> Point II is denied.

(ECF No. 16-5, at 4-5) (internal footnotes omitted).

Petitioner styles his argument as a sufficiency of the evidence challenge under *Jackson*, but in actuality he challenges whether he can be convicted for the sale of a controlled substance "on or about" a date rather than the specific date charged. Petitioner argues the Court of Appeals misapplied *State v. Pennell*, 399 S.W.3d 81, 93-94 (Mo. Ct. App. 2013), and the Court of Appeals' findings are clearly unreasonable. He does not point to any federal court precedent to support this argument.

A state court's decision is entitled to deference unless it "resulted in a decision that was contrary to, or involved unreasonable application of, clearly established *Federal law*, as determined by the *Supreme Court of the United States*," or it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (emphasis added). Petitioner argues the Court of Appeals misapplied state law, not federal law. He must show more than a misapplication of state

10

law for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting a habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Whether or not the Missouri Court of Appeals misapplied state law in affirming Petitioner's conviction for selling a controlled substance is irrelevant to this Court. Petitioner must show the Court of Appeals unreasonably applied federal law, which he has not done. The Court will deny the Petition on this ground.

      **C.**     **Ground Three – Jury Instructions**

In his third ground for relief, Petitioner asserts the trial court committed plain error in giving the instructions and verdict forms for the counts of selling a controlled substance, receiving stolen property, resisting arrest, and unlawful possession of drug paraphernalia. The verdict director forms for these counts referenced incorrect jury instruction numbers. Petitioner argues his convictions on these counts must be overturned due to this error, but Petitioner provides no basis for federal habeas relief. An incorrect jury instruction under state law is not a basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72. Consequently, the Court will deny the Petition on this ground.

      **D.**     **Ground Four – Ineffective Assistance of Trial Counsel**

In his fourth ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel did not call Torie Greene as a witness. Petitioner argues Ms. Greene would have testified the officers did not yell "police" or give any warning before entering Petitioner's residence.

The PCR motion court denied Petitioner's PCR motion on this ground, finding his trial counsel, Robert Taaffe, "investigated the witness and made the reasonable strategic decision not

to call her because he did not believe her testimony would be helpful." (ECF No. 16-6, at 70).

The Missouri Court of Appeals affirmed the motion court's decision holding:

> Counsel testified his investigator interviewed Greene, Movant's downstairs neighbor in the duplex. Trial counsel testified Greene told his investigator she heard a loud noise and Movant say, "Who is at my door," which would have corroborated Movant's contention he did not hear the police announce themselves. Counsel testified he did not call Greene because she also stated she did not hear any gunfire and that she was "blacked out" at some point during the course of events. Counsel believed Greene's credibility was damaged by the fact she did not hear any gunfire even though the uncontested evidence was that both Movant and the police fired their weapons.
>
> Greene testified via deposition, stating she talked to Movant's trial counsel and a defense investigator prior to trial. Greene testified she was in her bedroom in the first floor apartment when she heard a "boom," followed by three gunshots. Greene stated she heard Movant say, "Who the f---is that?" Greene testified she never heard anyone yell "police." Greene testified she was subpoenaed and sat outside the courtroom during Movant's trial. Greene stated she was willing and able to testify.
>
> . . .
>
> Here, the record demonstrates trial counsel knew about Greene, subpoenaed Greene, and Greene was willing to testify but trial counsel did not call her because he believed her credibility was damaged after she advised the defense investigator she did not hear any gunfire and that she blacked out at some point during the events. Trial counsel's decision not to call Greene as a witness fits squarely within the realm of reasonable trial strategy as portions of her statement clearly conflicted with the uncontested series of events.
>
> Although Greene stated in her deposition she did not hear the police announce themselves but she did hear[] gunfire and Movant ask who was there, the court was not compelled to believe Greene's testimony over that of trial counsel.
>
> . . .
>
> Furthermore, Greene's testimony would have been cumulative of other evidence presented at trial. . . . Greene's testimony suggesting the police officers did not announce themselves prior to entering Movant's home was cumulative of Movant's and Booker's testimony they did not hear the officers announce themselves before Movant fired his weapon.

(ECF No. 16-9, at 7-9).

In order to prevail on an ineffective-assistance-of-counsel-claim, a petitioner must meet the two-prong test established by *Strickland v. Washington*, 466 U.S. 687, 690, 694 (1984): (1) he must show that counsel's performance was so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and (2) he must show "that the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690.

Here, Petitioner's trial counsel made the strategic choice not to call Ms. Greene as a witness after thoroughly investigating the situation and her proposed testimony. This decision is "virtually unchallengeable." Although Ms. Greene testified in her deposition she heard the gun shots, the motion court, and consequently the Court of Appeals, believed the testimony of Mr. Taaffe that, at the time of trial, Ms. Greene stated she did not hear the gunshots, over that of Ms. Greene, a decision this Court cannot question. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). The Court of Appeals' decision was not an unreasonable application of federal law or an unreasonable determination of the facts, and it is entitled to deference under § 2254(d). The Court will deny the Petition on this ground.

    **E. Ground Five – Ineffective Assistance of Appellate Counsel**

In his fifth ground for relief, Petitioner asserts he received ineffective assistance of counsel when his appellate counsel did not challenge on direct appeal the trial court allowing

Officer David Menendez, a ballistics expert, to testify about the bullets' trajectories when the State did not disclose he would give such an opinion prior to trial.

> The Missouri Court of Appeals denied Petitioner's PCR appeal on this point, finding:
>
> Movant's trial counsel testified at the evidentiary hearing that Officer Menendez had written the ballistics report concluding the bullets in the wall opposite Movant's bedroom matched Movant's gun and was endorsed as a witness at trial. However, counsel was not aware until after the start of trial that Menendez was an expert in bullet trajectory and was going to testify about his opinion that Movant was standing in the hall while shooting, a proposition in direct contradiction to defense counsel's theory. Counsel objected to Officer Menendez's expert testimony on the trajectory of the bullets and included it in the motion for new trial.
>
> Movant's appellate counsel testified he was aware of the issue regarding Officer Menendez's trajectory testimony and the issue had been preserved, but he did not raise the issue on appeal because he did not think it was a "good issue." Appellate counsel also testified he did not believe there was a discovery violation by the State because Officer Menendez had been endorsed, trial counsel had the opportunity to interview Menendez prior to trial, and Menendez's testimony rebutted the defense's theory as presented during opening statements. Appellate counsel testified he elected to challenge the sufficiency of the evidence supporting Movant's conviction on the first-degree assault charges, contending there was insufficient evidence to support a finding Movant knew he was shooting at police officers.
>
> . . . "Appellate counsel is not ineffective for failing to raise every non-frivolous claim on appeal but may use his professional judgment to focus on the most important issues." Here, appellate counsel used his professional judgment and acted as a reasonably competent attorney would under the circumstances. Movant's Point II is denied.

(ECF No. 16-9, at 10-11) (quoting *Barnes v. State*, 334 S.W.3d 717, 723 (Mo. App. W.D. 2011)).

The Court of Appeals' decision is entitled to deference as its decision does not unreasonably apply federal law or unreasonably determine the facts. Appellate counsel is not required to raise every nonfrivolous claim but can "select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "[A]bsent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of

14

sound appellate strategy." *United States v. Brown*, 528 F.3d 1030 (8th Cir. 2008) (internal citations and quotations omitted). The Court of Appeals applied this standard and found Petitioner's appellate counsel acted as a reasonably competent attorney. The Court finds no reason to question appellate counsel's strategy in this case. The Court will deny the Petition on this ground.

      **F.      Procedurally Defaulted Grounds 6 and 7**

In his sixth ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel did not call Torie Greene and Keith Raymond as witnesses. As the Court has already addressed Petitioner's argument as to Torie Greene, it will focus on Petitioner's argument as to Keith Raymond. In his seventh ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to effectively cross-examine Officer Menendez, the ballistics expert. Petitioner has not raised either of these arguments before the state courts. Therefore, the claims are procedurally defaulted.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan,* 526 U.S. at 848)). A petitioner under § 2254 may avoid procedural default only by showing there was cause for the default and resulting prejudice, or a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). In order to establish cause, the petitioner must show "some objective factor external to

the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner argues there is cause and prejudice to overcome the procedural bar because his PCR counsel was ineffective in failing to raise these claims. In *Coleman v. Thompson*, the Supreme Court established the general rule that counsel's errors in post-conviction proceedings do not qualify as a cause for default. 501 U.S. 722, 753-75 (1991). In *Martinez v. Ryan*, the Supreme Court recognized a narrow exception to this rule: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or that counsel was ineffective." 566 U.S. 1, 17 (2012). The Supreme Court also noted a petitioner must demonstrate the underlying ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

Petitioner has not established his underlying claims are substantial so as to satisfy *Martinez* and overcome the procedural bar in this case. Petitioner has not established his claim in ground six is substantial for two reasons. First, he has not shown his counsel's performance in deciding not to call Mr. Raymond was deficient. Whether or not to call a witness is a matter of trial strategy, and incredibly difficult to challenge. *See Battle v. Delo*, 19 F.3d 1547, 1555 (8th Cir. 1994) (citing *Strickland*, 466 U.S. at 690). Second, Petitioner has not shown he was prejudiced by his counsel's failure to call Mr. Raymond as a witness. To establish prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This means "a probability sufficient to undermine confidence in the outcome." *Id*. Even if Mr. Raymond had

16

testified that he did not hear the officers announce their presence, a sufficient probability does not exist to show his testimony would have undermined confidence in the outcome of the trial. The jury would need to believe Mr. Raymond over the six officers who testified, all consistently with one another, that they shouted, as loudly as they could, "police, search warrant" multiple times during the incident, and the officer, six houses down, who heard the other officers shouting. Petitioner has not shown his claim in ground six is "substantial" because he has not shown his counsel's performance was deficient or he was prejudiced by his counsel's behavior.

Petitioner also has not shown his claim for relief in ground seven of his Petition is "substantial." In ground seven, Petitioner argues he received ineffective assistance of counsel when his trial counsel did not effectively cross-examine Officer Menendez. He argues his counsel should have challenged Officer Menendez's qualifications to testify as to a bullet's trajectory and should never have cross-examined him when he was unprepared to do so. Petitioner fails to establish his counsel's performance was deficient and that he was prejudiced by his counsel's performance. Courts "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011). Thus, the Eighth Circuit has found constitutionally deficient performance based on cross-examination where "inadmissible devastating evidence" was introduced due to counsel's deficient performance or where counsel did not cross-examine a witness with "grossly inconsistent prior statements." *Id*. Neither of those situations exists here. The Court finds the cross-examination of Officer Menendez was well within the "wide range of professionally competent assistance" required by *Strickland.* (ECF No. 16-1, at 535-543).

Furthermore, Petitioner has not shown the outcome of his trial would have changed if his trial counsel had questioned Officer Menendez's qualifications. He never asserts Officer

17

Menendez was not actually qualified to testify on bullet trajectory. For these reasons, he cannot establish his ineffective assistance of counsel claim in ground seven is "substantial."

Petitioner has not established that any of the claims raised in grounds six and seven are "substantial." Thus, he cannot establish cause and prejudice under *Martinez* to overcome the procedural bar, and the Court must dismiss the Petition on these grounds as procedurally defaulted.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Steven Haywood for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Steven Haywood's Petition is **DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a constitutional right, and this Court will not issue a Certificate of Appealability. 28 § U.S.C. 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

So Ordered this 4th day of February, 2021.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**